IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-2508-RM-KLM

ZACHARIAH ROBERTSON, individually and for others similarly situated,

    Plaintiff,

v.

WHITMAN CONSULTING ORGANIZATION, INC.,

    Defendant.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiffs' **Joint Motion for Approval of Settlement Agreement** [#77][1] (the "Motion"). The Named Plaintiff Zachariah Robertson, the nine Opt-In Plaintiffs, and Defendant Whitman Consulting Organization, Inc. (collectively, the "Parties") jointly request that the Court approve the executed Settlement Agreement and Release [#77-1] (the "Settlement Agreement"), which resolves all of Plaintiffs' claims in this matter under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#77] be **GRANTED**.

Since January 2017, federal circuits, as well as courts within the District of Colorado, have disagreed on the issue of whether private settlements of bona fide disputes require judicial approval under section 216(b) of the FLSA. *See Riley v. D.*

---

[1] "[#77]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF). This convention is used throughout this Recommendation.

*Loves Restaurants, LLC*, No. 20-1085 WJ/KK, 2021 WL 1310973, at *2 (D.N.M. Apr. 8, 2021) (highlighting split legal authority across federal circuit courts of appeals); *Slaughter v. Sykes Enters., Inc.*, No. 17-cv-02038-KLM, 2019 WL 529512, at *1-6 (D. Colo. Feb. 11, 2019) (highlighting split caselaw within the District of Colorado). However, the prevailing opinion in the District of Colorado prior to January 2017 was that, in the context of a private lawsuit, an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement and the district court enters a stipulated judgment approving the fairness of the settlement. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see also, e.g.*, *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *2 (D. Colo. Nov. 13, 2013) (citing *Lynn's Food Stores*, 679 F.2d at 1353) ("For the benefit of the parties, the court *must* scrutinize the proposed settlement documentation . . . .") (emphasis added).

Despite the current "disagreement over whether FLSA settlements *must* be approved by the Court, there does not appear to be disagreement at this time over whether FLSA settlements *may* be approved by the Court." *Slaughter*, 2019 WL 529512, at *6 (citation omitted) (emphases in original); *see also Edwards v. Hudspeth & Assocs., Inc.*, No. 20-cv-02867-STV, 2021 WL 2255358, at *2 (D. Colo. May 26, 2021) (citing *Slaughter*, 2019 WL 529512, at *6) ("[J]udicial approval of FLSA settlements is appropriate in certain cases, and there appears to be consensus that nothing *precludes* a court from engaging in a review."). Thus, in light of the Parties' request, the Court reviews the Motion [#77] and the attached Settlement Agreement [#77-1] under the factors traditionally considered in the District of Colorado.

In *Baker v. Vail Resorts Management Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014), the Court adopted the factors set forth in *Lynn's Food Stores*, stating that "[t]o approve the settlement agreement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." The Court addresses each of these factors in turn.

**A.     Bona Fide Dispute**

First, the Court must determine whether the Parties have provided "sufficient information to determine whether a bona fide dispute exists." *Baker*, 2014 WL 700096, at *1. To satisfy this requirement, the Parties must provide: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Id.*

The Parties have provided sufficient information in support of their assertion that a bona fide dispute exists. In the Motion [#77], Defendant is described as "a leading provider of construction management and inspection services for the oil and gas industry" on behalf of which "Plaintiffs performed construction management and inspection services . . . for its various oil and gas clients." *Motion* [#77] at 5. The Parties dispute both liability and the amount of overtime owed. *Id.* "Plaintiffs allege

3

certain per diem payments they received were for expenses incurred primarily for their own convenience and benefit, and therefore should have been included in their regular rate for purposes of calculating overtime." *Id.* Defendant, however, "denies that it failed to pay Plaintiffs' overtime premiums in compliance with federal law by failing to include per diem amounts in the calculation of overtime premiums" and, conversely, "alleges all per diem payments Plaintiffs received were paid for reasonable amounts for traveling expenses, or other expenses, incurred by Plaintiffs in the furtherance of Defendant's interest." *Id.* Additionally, Plaintiffs "claim Defendant's conduct was willful, therefore, justifying a three-year statute of limitations for their claims of unpaid overtime" but Defendant "denies that its conduct was willful and alleges that it acted in good faith." *Id.*

The Court finds that the information the Parties provided is sufficient to establish that a bona fide dispute existed between them.

**B.     Fair and Reasonable Settlement**

The Court next determines whether the proposed settlement is fair and reasonable. *Baker*, 2014 WL 700096, at *2. In making this determination, the Court considers: "(1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.*

Under the terms of the proposed Settlement Agreement [#77-1], Defendant is to pay a Gross Settlement Amount of $40,000. *Settlement Agreement* [#77-1] at 1. This amount "includes the settlement payments to Plaintiffs, Plaintiffs' Counsel's separately

negotiated attorneys' fees, Plaintiffs' Counsel's out-of-pocket litigation expenses, and a Service Award to class representative and named plaintiff Robertson." *Motion* [#77] at 1. As a result, the net settlement amount to be allocated to Plaintiffs is $16,822.31. *Id.* at 2.

    First, the Parties jointly assert that "the settlement was fairly and honestly negotiated by counsel highly experienced with FLSA collective actions." *Motion* [#77] at 6. The Parties engaged in negotiations and "went through numerous offer and demand cycles" before endorsing the proposed Settlement Agreement [#77-1]. *Id.* at 7. Second, the Parties contend that their bona fide disputes present questions of law and fact and "it is impossible to predict how a trier of fact would decide [them]." *Id.* Because of this uncertainty, the Parties wish to avoid litigation. *Id.* Third, the Parties agree that immediate settlement and recovery is more valuable than the uncertain possibility of future relief. *Id.* The Parties do not wish to engage in lengthy discovery and litigation proceedings, including potential appeals processes. *Id.* at 7-8. Lastly, "the Parties agree that the settlement is fair and reasonable." *Id.* at 8. The present Motion [#77] is joined by both Parties and the Settlement Agreement [#77-1] was signed by named Plaintiff Robertson and Defendant. Additionally, "[o]nly the Plaintiffs who have already consented to join this action" will be bound to the terms of the Settlement Agreement [#77-1] "and release Defendant of their wage and hour claims." *Id.*

    For the reasons stated above, particularly considering that the present Motion [#77] is joined by both Parties who are represented by experienced counsel, the Court finds that the proposed Settlement Agreement [#77-1] is fair and reasonable.

**C.     Service Payments**

Because the Settlement Agreement [#77-1] grants a service award to the sole named plaintiff, Zachariah Robertson, *Settlement Agreement* [#77-1] at 1, the Court considers whether the amount is reasonable. "The reasonableness of a service award to a named Plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement." *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018). However, "reasonable incentive payments have become common for class representatives, and, apparently by analogy, for FLSA named plaintiffs as well." *Id.* (internal quotation marks and citations omitted). The reasonableness of a service award is determined by considering: "(1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010).

Here, the Settlement Agreement [#77-1] delegates an additional $1,000 to be paid to Plaintiff Robertson as a service award. *Settlement Agreement* [#77-1] at 1. In the Motion [#77], the Parties maintain that a $1,000 service award is reasonable and unopposed by Defendant. *Motion* [#77] at 19. They further claim that the service award "is intended to recognize [Plaintiff] Robertson's initiative and efforts on behalf of the Plaintiffs and the time and effort he contributed to this lawsuit and the settlement over the last year, as well as to compensate him for the general release he is providing to Defendant." *Id.* The Parties describe, among other things, the risk of "retaliation and blackballing from prospective employers in the oil industry" Plaintiff Robertson bore by

6

being the publicly named plaintiff as well as the assistance he provided "throughout the litigation by providing . . . information related to his work for Defendant" and alerting "the Plaintiffs . . . of their opportunity to join this collective action." *Id.* at 20. The Parties assert that the "mere 0.2% of the Gross Settlement Amount" is reasonable given the "substantial risk" undertaken by Plaintiff Robertson and significant time he dedicated "in representing the interests of Plaintiffs."[2] *Id.* at 19-20.

In consideration of the above, the Court finds that the $1,000 service award, to be paid to Plaintiff Robertson as the sole named plaintiff in this collective action, is reasonable.

### D.     Reasonable Attorneys' Fees and Costs

The Court next determines whether the proposed settlement awards reasonable attorneys' fees. *Baker*, 2014 WL 700096, at *3. The Parties aver that it is unnecessary for the Court to review the attorneys' fee because Plaintiffs' Counsel's attorneys' fees were separately negotiated from the FLSA claims settlement. *Motion* [#77] at 9. In *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019), the Eighth Circuit held that "any authority for judicial approval of FLSA settlements . . . does not extend to review of settled attorney fees" because the wording of 29 U.S.C. § 216(b), which allows "fees 'in addition to any judgment awarded,' [treats] the merits of an FLSA claim and the attorney fees as distinct." The Court is unaware of, and the Parties do not cite, any relevant Tenth Circuit cases applying the Eighth Circuit's decision or equivalent

---

[2] In *Whittington v. Taco Bell*, a $7,500 service award that equaled approximately 0.3% of a $2,490,000 total settlement amount was reasonable and even "very modest" given the contribution of the named plaintiff. 2013 WL 6022972, at *6.

rule.³ In fact, in *Wisneski v. Belmont Management Co., Inc.*, No. 2:19-cv-2523-JAR, 2021 WL 1999094, at *2 n.17 (D. Kan. May 19, 2021), the court acknowledged *Barbee*, but nevertheless proceeded with its analysis to determine whether the separately negotiated attorney fees and expenses were reasonable.

Regardless, even if the Court were to adopt the Eighth Circuit's rule from *Barbee*, it would not be applicable here. Even within the Eighth Circuit, district courts have refrained from applying *Barbee* in cases where "the attorney's fees were calculated as a percentage of settlement funds rather than negotiated separately." *Johnson v. Himagine Sols., Inc.*, No. 4:20-cv-00574-SPM, 2021 WL 2634669, at *6 n.3 (E.D. Mo. June 25, 2021). Attorneys' fees that are calculated as a percentage of settlement funds are "necessarily intertwined with the [P]laintiffs' settlement." *Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-cv-02635-JAR, 2021 WL 1784328, at *2 (E.D. Mo. May 5, 2021) (alteration in original) (citation omitted); *see also Hebert v. Chesapeake Operating, Inc.*, 2:17-cv-852, 2019 WL 4574509, at *3 (S. D. Ohio Sept. 20, 2019).

Here, the Parties claim that they "separately negotiated that Plaintiffs' Counsel's attorneys' fee award shall account for 40% of the Gross Settlement Amount." Motion [#77] at 2. Because the separately negotiated amount was merely an agreed on percentage of the settlement amount, Plaintiffs' Counsel's attorneys' fee award is

---

³ The Parties cite cases which apply the Eighth Circuit's decision in the Motion [#77]; however, other than *Horton v. Right Turns Supply, LLC*, 445 F. Supp. 3d 202 (W.D. Pa. 2020), the cited cases are from district courts within the Eighth Circuit which are bound by the decision in *Barbee*. *See* Motion [#77] at 9. The Parties also cite *Fails v. Pathway Leasing LLC*, No. 18-cv-00308-CMA-NYW, 2018 WL 6046428 (D. Colo. Nov. 19, 2018), as part of a string cite used to support their statement that "[r]ecently, courts across the country have determined that a settlement of attorneys' fees that, like here, was separately negotiated from a settlement of FLSA claims is not subject to review." Although *Fails* is a decision from within the District of Colorado, it did not directly concern the issue of separately negotiated attorneys' fees, but, rather, whether courts are "required to review the merits of the settlement agreement" generally. *See Fails*, 2018 WL 6046428, at *4.

"necessarily intertwined" with the Settlement Agreement [#77-1].  Further, the damages awards for Plaintiffs were calculated as pro rata allocations of the Net Settlement Amount, which is the leftover amount after deducting (1) Plaintiffs' Counsel's attorneys' fees, (2) Plaintiffs' Counsel's costs, and (3) Plaintiff Robertson's service award.  *Id.* at 1-2.  "Taken together, this language clearly illustrates a typical common fund settlement with fees part of the global resolution, not separately negotiated categories of recovery." *Hebert*, 2019 WL 4574509, at *3.[4]  For these reasons, the Court considers whether the Plaintiffs' Counsel's attorneys' fees are reasonable.

The Court generally prefers the lodestar method of calculating reasonable attorney fees, but the Parties have failed to provide adequate information to conduct such an analysis.  However, the Tenth Circuit Court of Appeals has also endorsed an alternate "common fund approach" to determining the reasonableness of fees in these types of cases.  *See, e.g.*, *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994).  The parties here have provided adequate information for the Court to analyze the reasonableness of the attorneys' fees under that method.

When using the common fund approach, the Court must "articulate specific reasons for" the reasonableness of the percentage of the common fund awarded. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (quoting *Ramos v.*

---

[4] The terms of the proposed agreement in *Hebert* were very similar to those here.  The court there stated: "[T]he terms of the Proposed Agreement itself belie the parties' new contention that attorney's fees were negotiated separately from the plaintiffs' recovery.  The Proposed Agreement defines the 'Gross Settlement Amount' as $8.55 million.  In turn, 'Net Settlement Amount' is the Gross Settlement Amount less payment of Plaintiffs' Counsels' attorney's fees in the amount of 40% of the Gross Settlement Amount, or $3.42 million.  Class members are to be paid from the Net Settlement Amount and the Proposed Agreement further specifically states that each member[ ]" was entitled to net "pro-rata damages," as set forth in a separate exhibit to the agreement.  *Hebert*, 2019 WL 4574509, at *3.

*Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)).  Because the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), measure an attorney's contributions, these factors are used in the Tenth Circuit to determine the reasonableness of percentage fee awards.  *Id*.  These factors are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*.  454-55.  The Court may consider and give special weight to the factors that are most relevant, noting that not all factors are applicable to every case.  *Lucken*, 2010 WL 5387559, at *3.

The Court finds that the percentage fee award to Plaintiffs' Counsel is reasonable given the time and labor involved, the complexity of the dispute, the experience of Plaintiffs' Counsel, the fact that the percentage fee was prearranged, the comparative reasonableness of the award amount in similar cases, and the positive results for Plaintiffs.

Plaintiffs' Counsel has performed substantial work in furtherance of this matter as it has been pending for over two years.  During that time, Plaintiffs' Counsel, among other things, (1) engaged in "discovery regarding whether Plaintiffs' per diem payments should have been included in the calculation of their regular rate for overtime purposes;" (2) reviewed payroll records for Plaintiffs to analyze potential damages and "create a highly detailed damage model, which was used for extensive settlement negotiations

10

and mediation;" and (3) engaged in "extensive good faith negotiations with Defendant's Counsel over months to determine the scope of the settlement and the scope of the release." *Motion* [#77] at 15-16.

The nature of this dispute regards a specialized and complex area of law. *Whittington*, 2013 WL 6022972, at *6 ("FLSA cases are not novel, but this is a specialized area of the law where some degree of extra skill is needed to litigate."). Relatedly, Plaintiffs' Counsel has extensive experience in litigating FLSA collective action claims. *Motion* [#77] at 13. The Parties state that "FLSA collective action cases such as this are the main focus of Plaintiffs' Counsel's docket" and that their "joint docket has carried around or over 250 cases involving FLSA collective action claims for oilfield workers" in recent years. *Id.*

Plaintiffs' Counsel represented Plaintiffs on a contingency basis, agreeing in their Professional Services Agreement with Plaintiffs to a contingency fee of 40% of the gross settlement amount. *Id.* at 17. Although this fact is not determinative, it is relevant to the full review. *Brown*, 838 F.2d at 455. Thus, the Court considers whether this percentage is reasonable. "The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class," *Lucken*, 2010 WL 5387559, at *5, but, "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," *Cimarron Pipeline Const., Inc. v. Nat'l Council on Compensation Ins.*, No. 89-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993). In *Whittington v. Taco Bell*, fees and costs amounting to "approximately 39% of the fund as a whole" were determined to be in the normal range. 2013 WL 6022972, at *6. Here, the 40% fee is in

addition to the Plaintiffs' Counsel's Costs ($6,177.69). *See Motion* [#77] at 1. Although the percentage appears to be on the higher end of the customary range, the Court finds that it is reasonable in comparison to similar cases because it is not exorbitant, it was prearranged, and it is sought jointly by the Parties. Additionally, the Court agrees with the Parties that Plaintiffs' Counsel achieved a high degree of success in this case. As described in the Motion [#77], the Net Settlement Amount provides Plaintiffs with approximately 71% of their three-year and 116% of their two-year back wages. *Id.* at 18.

For the reasons stated above and based on the undersigned's thirty-six years of combined private and judicial experience and careful consideration of the Motion [#77], the attached Settlement Agreement [#77-1], and the issues underlying this matter, the Court finds that payment of 40% of the Gross Settlement Amount, totaling $16,000, plus $6,177.69 in litigation costs, to Plaintiffs' Counsel is reasonable.

### E. Conclusion

After reviewing the Motion [#77] and proposed Settlement Agreement [#77-1], the Court finds that the litigation involves a bona fide dispute, that the proposed Settlement Agreement is fair and equitable to all parties concerned, and that the proposed settlement awards reasonable attorneys' fees and costs. Accordingly, the Court respectfully **RECOMMENDS** that:

(1) The Motion [#77] be **GRANTED**.

(2) The $40,000 Gross Settlement Amount, as set forth in the Settlement Agreement [#77-1], be **approved.**

(3) The $1,000 service payment for named plaintiff Zachariah Robertson be **approved**. *See Settlement Agreement* [#77-1] at 1.

(4) The $16,000 in Plaintiffs' Counsel's attorneys' fees be **approved**. *See id.*

(5) The $6,177.69 in Plaintiffs' Counsel's litigation costs be **approved**. *See id.*

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: October 22, 2021

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge